IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEVOLA CHAPPLE                                                                   PLAINTIFF

V.                                       NO. 11-2214

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                   DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Devola Chappel, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her application for DIB on May 6, 2008, alleging an inability to work since March 31, 2008, due to being "hiv positive and I have back problems." (Tr. 134, 137). An administrative hearing was held on August 4, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 14-40). By written decision dated January 8, 2010, the ALJ found Plaintiff had the following severe impairments: rheumatoid arthritis and asymptomatic HIV infection (Tr. 64). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Supbart P, Regulation No. 4. (Tr. 64). The ALJ

found that Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work, and was not capable of performing her past relevant work. (Tr. 67). He also found, with the help of the Vocational Expert (VE), that there were other jobs Plaintiff would be able to perform, such as charge account clerk/new account interviewer and production worker/helper assembler. (Tr. 67).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 14, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 10).

## II.    Evidence Presented:

Plaintiff was born in 1967 and completed the 12th grade in school. (Tr. 134, 143). The earliest records contained in the transcript indicate that Plaintiff reported back pain to Dr. Thomas E. Cheyne, of River Valley Musculoskeletal Center, on April 27, 2007, as well as pain in her right wrist which made her finger numb. (Tr. 223). The impression at that time was lumbar strain with possible radiculopathy, and Dr. Cheyne put Plaintiff on Mobic and had her take hot showers, twice daily. (Tr. 224). X-rays of Plaintiff's lumbar spine and pelvis revealed normal lumbar spine and normal anteroposterior pelvis. (Tr. 225).

On September 17, 2007, Dr. Mark D. Rowland, Plaintiff's treating physician, reported that Plaintiff had been doing well, was taking her medication without difficulty, and had some back problems with pain radiation into her left leg. His impression was: HIV disease, under good control, and probable disc disease in the lumbar spine. (Tr. 228).

An MRI of Plaintiff's lumbar spine without contrast on September 21, 2007, revealed

mild degenerative changes involving the lumbar spine without disc herniations. (Tr. 218). On October 12, 2007, Dr. Cheyne reported that Plaintiff was doing much better, having only mild soreness, and that Plaintiff would continue her Mobic and hot showers. (Tr. 217). He reported that she was not a surgical candidate, having nothing that needed to be addressed surgically, and that if they needed to try other measures "we will consider physical therapy and/or lumbar epidural steroid injections." (Tr. 217). There is no record indicating Plaintiff participated in physical therapy or received steroid injections.

On April 16, 2008, Dr. Perka Guenev, of AHEC Family Center, saw Plaintiff, and he noted that Plaintiff had extensive history of HIV treatment, and that she was on Norvir, Truvada and Reyataz at that time for HIV, and had been on those medications for the previous 5 years. (Tr. 195). Dr. Guenev also noted that Plaintiff complained of lower back pain on and off, and dysuria[1] for two months. (Tr. 195). She also reported some vision changes, for which she was seeing an opthamologist. Plaintiff reported that she had been tested for tuberculosis initially when she was diagnosed with HIV, the test came back positive, she had treatment for nine months, and a follow-up chest x-ray was clear. (Tr. 195). Dr. Guenev noted that Plaintiff's gait and station were normal, and that she could undergo exercise testing and/or participate in an exercise program. He found her to have normal alignment and mobility of her head and neck, and normal range of motion and strength in her extremities. (Tr. 197). Dr. Guenev added dyusuria and chronic low back pain to his assessment, and also assessed Plaintiff with HIV disease. (Tr. 197).   On June 9, 2008, a Physical RFC Assessment was completed by non-examining consultant, Dr. Bill F. Payne. (Tr. 236-243). Dr. Payne concluded that Plaintiff

---

[1] Dysuria - Difficulty or pain in urination. Stedman's Medical Dictionary 604 (28th ed. 2006).

could:

> occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 237). Dr. Payne also found that no postural, manipulative, visual, communicative or environmental limitations were established. (Tr. 238-240).

On July 25, 2008, Dr. Stephanie Ho, of AHEC Family Center, saw Plaintiff, who complained of increasing back pain with radiation down the outside of both legs, increased swelling in both legs, finger stiffness, and frequency and urgency of urination. (Tr. 264). Dr. Ho added insomnia and urinary frequency to her assessment, and assessed Plaintiff with chronic low back pain, as deteriorated, dysuria, as deteriorated, HIV disease as stable, urinary frequency, and insomnia. (Tr. 266). On August 8, 2008, Dr. Stepanie Ho noted that Plaintiff's gait was altered due to obesity, and added dyslipidemia[2] to her assessment, assessed frequent urination as stable, assessed insomnia as stable, and assessed HIV disease as deteriorated. (Tr. 259). On September 23, 2008, Dr. Ho again noted that Plaintiff's gait was altered due to obesity, and assessed Plaintiff as follows:

1. Added arthritis, rheumatoid
2. Assessed HIV disease as stable
3. Assessed frequency, urinary as stable
4. Assessed insomnia as improved
5. Assessed pain in joint, hand as deteriorated
6. Assessed low back pain, chronic as stable
7. Assessed dysuria as stable.

---

[2]Dyslipidemia - Abnormality in, or abnormal amounts of lipids and lipoproteins in the blood; see also *hyperlipidemia* and *hypolipemia*. Dorland's Illustrated Medical Dictionary 586 (31st ed. 2007).

(Tr. 246). An x-ray of both of Plaintiff's hands on September 23, 2008, revealed: 1) distal interphalangeal joint space narrowing suggesting some degree of osteoarthritis; and 2) changes at the metacarpophalangeal joint spaces suggestive of very early rheumatoid as stated by clinical history. (Tr. 248). X-ray of Plaintiff's feet revealed mild degenerative change as noted. (Tr. 248).

On October 27, 2008, Dr. Ronald Crow, non-examining consultant, stated in a Case Analysis that he had reviewed all of the evidence in the file and that the assessment of June 9, 2008, was affirmed as written. (Tr. 281).

At the hearing, Plaintiff testified that up until March 31, 2008, she was employed at Whirlpool. (Tr. 17). She stated that she was in training, going to school, and that Whirlpool was paying her expenses. (Tr. 22). She testified that she was offered to be taken from the work pool and decided to "take it out because of me hurting all the time at work." (Tr. 22). Plaintiff thought it was a good opportunity to go back and get her education and sign up for disability. (Tr. 22). Plaintiff further testified that she was 5'6" and weighed 361 pounds. (Tr. 28). In one of her undated Disability Reports- Appeal, Plaintiff reported that she could take care of her personal needs, that her daughter lived with her and took care of the house cleaning, and helped Plaintiff do the shopping. (Tr. 170). In her May 17, 2008 Function Report, Plaintiff indicated that she tried to clean her house, took a nap, watched television, and cooked. She also reported that she prepared her own meals, did laundry, and ironed, but had to sit down, and vacuumed sometimes. (Tr. 147-151). She shopped in stores for groceries, clothes, and household items twice a month, and spent time with others, visiting over the computer or phone, and sometimes went to church. (Tr. 149-151).

**III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

AO72A
(Rev. 8/82)

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in not recognizing Plaintiff's low back pain, obesity, and urinary urgency and frequency as severe impairments: 2) The ALJ discredited Plaintiff's subjective complaints inappropriately; 3) The ALJ made an improper RFC finding; and 4) The ALJ did not sustain his burden of proving that there were other jobs Plaintiff could perform. (Doc. 9).

**A.    Impairments:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §

§ 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

With respect to Plaintiff's back pain, the ALJ found that clinic notes from River Valley Musculoskeletal Center, dated October 12, 2007, stated that Plaintiff was doing much better, and would continue her Mobic and hot showers.  (Tr. 217).  In addition, on April 16, 2008, Dr. Guenev found Plaintiff's gait and station were normal, that Plaintiff had normal alignment and mobility of her head and neck, and normal range of motion and strength in her extremities.  (Tr. 197).  Plaintiff's MRI revealed only mild degenerative changes with no disc herniations and her x-rays were normal.. Dr. Payne concluded from the evidence of record that Plaintiff had no postural or manipulative limitations.  (Tr. 238-239).  Although Dr. Ho found Plaintiff had an altered gait due to obesity, there is no indication that Plaintiff's altered gait limited her functional capabilities.  In her September 23, 2008 report, Dr. Ho assessed Plaintiff's chronic low back pain as stable.  (Tr. 246).  Finally, at the hearing, Plaintiff testified that she had started another pain medicine called Otram, and that she was getting some relief from the Otram.  (Tr. 25).

With respect to her obesity, it is noteworthy that throughout the record, Plaintiff did not allege obesity was a disabling impairment.  She testified that she weighed approximately the same weight while she worked at Whirlpool, and her obesity did not prevent her from working then.  (Tr. 28).

With respect to Plaintiff's frequent urination, Dr. Ho also concluded that this was stable in her September 23, 2008 report.  (Tr. 246).

Based upon the foregoing, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's only severe impairments were her asymptomatic HIV and

AO72A
(Rev. 8/82)

rheumatoid arthritis.

### B. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

The ALJ recognized and considered Plaintiff's subjective complaints of pain and discomfort, but found that they were not necessarily disabling.. (Tr. 66). The ALJ found that a degree of pain was substantiated by the record, however, Plaintiff's degree of pain relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of the RFC as determined in the decision. Plaintiff's daily activities belie Plaintiff's claim of disability. She testified that she could take care of her personal needs, that her daughter lived with her and took care of the house cleaning and helped Plaintiff do the shopping. (Tr. 170). In her May 17, 2008 Function Report, Plaintiff indicated that she tried to clean her house, took a nap, watched television, and cooked. She also reported that she prepared her own meals, did laundry, and ironed, but had to sit down. (Tr. 147-151). She shopped in stores for groceries, clothes, and household items twice a month, and spent time with others,

visiting over the computer or phone, and sometimes went to church. (Tr. 149-151

As duly noted by Defendant, Plaintiff's job at Whirlpool did not end because of her condition, but because she decided to take advantage of incentives to move into another area of work. Plaintiff was accepted into a training program specifically designed to retrain people for other work. Plaintiff's claims of pain and disability are inconsistent with full-time school attendance, because, if accepted as true, her alleged symptoms would have precluded her from being able to attend classes full-time.

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in his brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The undersigned believes there was substantial evidence for the ALJ to make an informed decision and to support his credibility findings.

**C.   RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642,

-10-

646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In his decision, the ALJ found that Plaintiff was capable of performing a full range of sedentary work. The ALJ noted:

> The claimant testified that she is unable to work due to HIV and rheumatoid arthritis which limit her ability to perform work tasks and sit/stand. She stated that she has been receiving unemployment benefits since late 2007 after a voluntary layoff. She testified that her last employer is paying her expenses to go to school. She testified that she will graduate from school in May 2010. She stated that she lives with her daughter. She stated that she rides to class with her daughter or drives herself.

(Tr. 65). The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 65). He noted that the record did not contain any opinions from treating or examining physicians indicating Plaintiff was disabled or even had limitations greater than those determined in his decision. Based upon the record as a whole, the ALJ found that Plaintiff's asymptomatic HIV and any related limitations, and Plaintiff's rheumatoid arthritis, and any related limitations, were not severe to a degree that would limit activities beyond the scope of the RFC determined in his decision.

The Court believes that the RFC took into consideration all of Plaintiff's limitations which were supported by the record. Therefore, the Court believes there was substantial evidence to support the ALJ's RFC findings.

**D.    Reliance on VE's Testimony:**

At the hearing, the ALJ discussed Plaintiff's past relevant work with the VE. (Tr. 35-39).

He then asked the VE if he could give examples of light unskilled jobs. After the VE gave him some jobs that would fit within that category, the ALJ then asked the VE to give him a couple of sedentary, unskilled jobs. (Tr. 37). In response, the VE said that one example would be that of a charge account clerk/new account interviewer, and another example would be in the field of the production worker/helper. (Tr. 27-38). Plaintiff's attorney then asked the VE if there would be any jobs if the individual had to lie down an hour a day for pain relief or was away from the working position due to bathroom breaks for up to an hour a day. (Tr. 39). The VE responded that there would be no jobs. (Tr. 39). The undersigned believes the exchange between the ALJ and VE was adequate and appropriate, since the ALJ found that Plaintiff could perform a full range of sedentary work. Since the undersigned believes that there was sufficient evidence to support the ALJ's RFC finding that Plaintiff could perform a full range of sedentary work, his inquiry of the VE of examples of sedentary, unskilled jobs took into consideration all of the limitations that were supported by the record.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, and based upon the fact that the Court has found that there is substantial evidence to support the ALJ's RFC findings, the Court finds the ALJ set forth the impairments which he accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's responses to the question posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a charge account clerk/new account interviewer, and production worker/helper assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question

constitutes substantial evidence).

**V.     Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. §636 (b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of October, 2012.

*/s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE